UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| AUBREY I. STEINBERG, | Case No. CV 16-06163-DFM |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| v. | |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security,[1] | |
| Defendant. | |

Aubrey I. Steinberg ("Plaintiff") appeals from the Social Security Commissioner's final decision denying his applications for Supplemental Security Income ("SSI") and disability insurance benefits ("DIB"). For the reasons discussed below, the Commissioner's decision is affirmed and this matter is dismissed with prejudice.

///

///

---

[1] On January 23, 2017, Berryhill became the Acting Social Security Commissioner. Thus, she is automatically substituted as defendant under Federal Rule of Civil Procedure 25(d).

# I.
# BACKGROUND

Plaintiff filed an application for DIB on October 30, 2012. See Administrative Record ("AR") 234-35. Plaintiff also filed an application for SSI on November 5, 2012. See AR 236-42. Plaintiff alleged in both applications that his disability began in 2010. See AR 234-42. After his applications were denied, he requested a hearing before an administrative law judge ("ALJ"). See AR 117-19. At a July 2014 hearing, the ALJ heard testimony by a vocational expert ("VE") and Plaintiff, who was represented by counsel. See AR 42-80.

On October 24, 2014, the ALJ denied Plaintiff's claims. See AR 22-33. The ALJ concluded that Plaintiff's date last insured was December 31, 2015. See AR 22. The ALJ found that Plaintiff had not engaged in substantial gainful activity since November 24, 2010, and that Plaintiff has severe impairments of degenerative disc disease of the lumbar spine, peripheral vascular disease, and obesity. See AR 24. The ALJ determined that Plaintiff's medically determinable impairments of anxiety, depression, and a bipolar disorder are non-severe. See id. Despite Plaintiff's impairments, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform light work with the following limitations: he is limited to lifting or carrying ten pounds frequently and twenty pounds occasionally; he is able to sit, stand, and/or walk for six hours out of an eight-hour work day; and he is able to climb ramps and stairs, balance, stoop, kneel, crouch, and crawl on a frequent basis but is restricted to climbing ladders, ropes, or scaffolds on an occasional basis. See AR 28-32.

Based on the VE's testimony, the ALJ found that given Plaintiff's age, education, work experience, and RFC, Plaintiff would be able to perform his past relevant work as a cashier. See AR 32. Thus, the ALJ found that Plaintiff

was not disabled. See AR 33.

The Appeals Council denied review of the ALJ's decision, which became the final decision of the Commissioner. See AR 1-4; see also 20 C.F.R. §§ 404.981, 416.1481. Plaintiff sought judicial review in this Court. See Dkt. 1.

## II.
## DISCUSSION

Plaintiff disputes the ALJ's conclusion that Plaintiff's mental health impairments are not severe. See Joint Stipulation ("JS") at 4. Specifically, Plaintiff argues that the ALJ improperly relied on records showing improvement in Plaintiff's mental health instead of the record as a whole and improperly relied on opinions from doctors who did not have the benefit of Plaintiff's entire record. See JS at 5-10.

At step two of the sequential evaluation process, the claimant has the burden to show that he has one or more "severe" medically determinable impairments that can be expected to result in death or last for a continuous period of at least 12 months. See Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987) (noting claimant bears burden at step two); Celaya v. Halter, 332 F.3d 1177, 1180 (9th Cir. 2003) (same). To establish that a medically determinable impairment is "severe," the claimant must show that it "significantly limits [his] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c); accord §§ 404.1521(a), 416.921(a).[2] "An impairment or combination of impairments may be found 'not severe only if the evidence

---

[2] Where, as here, the ALJ's decision is the final decision of the Commissioner, the reviewing court generally applies the law in effect at the time of the ALJ's decision. See Lowry v. Astrue, 474 F. App'x 801, 804 n.2 (2d Cir. 2012) (applying version of regulation in effect at time of ALJ's decision despite subsequent amendment); Garrett ex rel. Moore v. Barnhart, 366 F.3d 643, 647 (8th Cir. 2004) ("We apply the rules that were in effect at the time the Commissioner's decision became final.").

3

establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.'" Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005) (citation and emphasis omitted); see also Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996) ("[T]he step-two inquiry is a de minimis screening device to dispose of groundless claims."). Applying the applicable standard of review to the requirements of step two, a court must determine whether an ALJ had substantial evidence to find that the medical evidence clearly established that the claimant did not have a medically severe impairment or combination of impairments. See Webb, 433 F.3d at 687.

When determining whether substantial evidence exists to support the Commissioner's decision, a court must examine the administrative record as a whole, considering adverse as well as supporting evidence. See Mayes, 276 F.3d at 459. A reviewing court must "weigh[] both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." Trevizo v. Berryhill, 871 F.3d 664, 675 (9th Cir. 2017) (internal citation omitted). However, "it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working. Reports of 'improvement' in the context of mental health issues must be interpreted with an understanding of the patient's overall well-being and the nature of her symptoms." Garrison v. Colvin, 759 F.3d 995, 1017-18 (9th Cir. 2014) (citation and footnote omitted). Finally, "[w]here evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017) (internal citation omitted); see also Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the ALJ's conclusion, [the reviewing court] may not substitute [its] judgment for that of the ALJ.") (citation

omitted).

Plaintiff contends that the ALJ gave too much emphasis to evidence showing that Plaintiff's mental condition had improved, arguing that "symptoms . . . not worsen[ing]" is not tantamount to "improvement." JS at 6. Plaintiff further argues that his improved functioning while being treated and having limited environmental stressors does not inherently imply an ability to work. See id. at 6-7. Plaintiff does not dispute that he has experienced improvement in his mental conditions—only that such improvement must be considered in light of the record "as a whole." Id. at 6 ("There is no doubt that [Plaintiff] has bouts of improvement with normal examinations . . . .").

The ALJ concluded that the medical evidence, on the whole, "shows improvement in his psychological condition with medication and stability." AR 25. In support of this conclusion, the ALJ noted that after October 2012, Plaintiff did not seek outpatient mental health treatment again until March 2014—which indicates that his mental health had been well-managed with medication for over a year. See AR 26. The ALJ further observed that in the years after his voluntary hospitalization in September 2012, Plaintiff did not require further emergency care or hospitalization for his mental condition. See id. The record supports the ALJ's conclusions that Plaintiff's mental impairments of anxiety, depression, and a bipolar disorder improved with medication. See, e.g., AR 1060-64, 1070-75, 2096-2100, 2087-93. "Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for [disability] benefits." Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006).

In addition to considering Plaintiff's treatment record, the ALJ gave great weight to Dr. Stephan Simonian's opinion that Plaintiff's mental health condition imposed only a mild limitation on his ability to adapt to stresses common to a normal work environment. See AR 26-27. Dr. Simonian

examined Plaintiff in March 2013 and found that despite reports of difficulty sleeping, poor appetite, and racing thoughts, Plaintiff presented with "normal appearance, behavior, speech, thought process, thought content, intellectual functioning, and memory with the ability to remember three out [of] four objects after three minutes." AR 26. According to the ALJ, Dr. Simonian's evaluation was bolstered by the opinion of non-examining state agency psychological consultant, Dr. Pamela Hawkins, and Plaintiff's longitudinal mental health treatment records, which reflect "improvement and regular notations of stability" while Plaintiff is on his medication. AR 27.

Plaintiff also contends that the ALJ erred by relying on "isolate[d] portions of the record" to show that his mental status examinations were "normal." JS at 7. Plaintiff argues that "multiple treatment notes . . . weaved in between those that the ALJ isolated . . . paint a different picture" of Plaintiff's alleged mental impairments. Id. at 8. Finally, Plaintiff suggests that his failure to obtain mental health examinations does not translate to an absence of a mental disability. See id.

The ALJ did not base its ruling on any isolated facts or any specific "quantum" of supporting evidence. See Trevizo, 871 F.3d at 675. Instead, the ALJ's opinion detailed Plaintiff's documented mental health condition from October 2011, when Plaintiff was first diagnosed with mental health conditions, through the date of the hearing. See AR 24-28. These considerations included, but were not limited to: Plaintiff's "unremarkable mental status examinations" and "mild symptoms" evidence by Plaintiff's treating doctors between January and September 2012, see AR 455-59, 522-26, 596-600, 634-37, 658-59, 681-84, 771-74, 799-802, 879-82, 900-03; Plaintiff's Global Assessment Functioning ("GAF") scores during 2012 being 61-70, indicating mild symptoms, see id.; Plaintiff's hospitalization in September 2012 for attempted suicide, see AR 26, 1022-26, 1080-82; Plaintiff's follow-up

6

mental assessment in October 2012, see AR 1060-68; Plaintiff's consultative examination by Dr. Simonian in March 2013, see AR 1069-75; Dr. Hawkins's analysis of Plaintiff's medical record, see AR 81-106; Plaintiff's mental health assessment from March 2014, see AR 2099-2100; and doctors' notes from Plaintiff's doctors' visits in June and July 2014, see AR 2087-93. In his written opinion, the ALJ also substantively reviewed and analyzed Plaintiff's GAF scores from 2012 through 2014 to conclude that Plaintiff's scores should be assigned little weight. See AR 27. Rather than limiting his analysis to isolated portions of the record, as Plaintiff contends, the ALJ considered in his opinion Plaintiff's medical records comprehensively. Moreover, despite his contention that failing to obtain mental health examinations does not implicate an absence of a mental disability, Plaintiff has not met his burden of showing, through the record or otherwise, that his mental impairments are severe enough to prevent him from engaging in any substantial gainful activity. See Bowen, 482 U.S. at 147 (claimant bears burden at step two).

Finally, Plaintiff argues that the ALJ erred by relying on the opinions of examining psychiatrist Dr. Simonian and state agency psychological consultant Dr. Hawkins. See JS at 9. Specifically, Plaintiff alleges that these two examiners did not have the entire record to review and that they only saw a "snapshot" of Plaintiff's "upward or elevated mood swing." Id. Plaintiff contends that the ALJ erred in relying on the doctors' assessment based on these limited snapshots despite "medical records showing a § 5150 hold; a voluntary 7-day stay; bipolar medication; hallucinations; and anxiety with impaired concentration." JS at 10.

The ALJ did not err by giving great weight to the medical opinions of Drs. Simonian and Hawkins when making his severity determination. Because it rests on his own independent examination of Plaintiff, Dr. Simonian's opinion itself constitutes substantial evidence that Plaintiff's mental

7

impairments were not severe. See Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). Moreover, as noted in the ALJ's opinion, the findings of Drs. Simonian and Hawkins were "consistent with each other and the record as a whole." AR 27. The ALJ also noted that the doctors' findings that Plaintiff exhibited only mild symptoms or a non-severe mental impairment are "supported by the medical evidence," which showed "consistently" unremarkable mental status examinations, GAF scores indicating mild symptoms, and a gap in treatment in 2013 where Plaintiff did not seek help—suggesting that his condition was well-managed with medication. Id.; see also AR 455-59, 522-26, 596-600, 634-37, 658-59, 681-84, 771-74, 799-802, 879-82, 900-03. The ALJ's conclusions are also consistent with his observations of Plaintiff's mental health condition dating back beyond the state agency examiners' assessments to October 2011, when, as the ALJ noted, Plaintiff first sought psychiatric treatment and was diagnosed with anxiety and insomnia, prescribed medication, and saw an improvement in his mental condition to "fe[eling] stable." AR 25; see also AR 771, 799. The ALJ also acknowledged in his ruling that Plaintiff's mental health symptoms experienced "waxing and waning" correlating with family stressors and culminating in his hospitalization in September 2012 pursuant to a § 5150 hold, see AR 25-26 (citing Exhibit 7F, AR 1080-82), and his subsequent voluntary hospitalization that same month, see id. (citing Exhibit 2F, AR 1022-27). And while Plaintiff previously reported "occasionally" suffering from hallucinations to his doctors, see, e.g., AR 1022, 2099 (noting "auditory" hallucinations), such isolated reports do not suffice to overcome the countervailing evidence supporting the ALJ's severity determination. See, e.g., AR 1073 ("[N]o delusional thinking" and "no active hallucinations."), AR 1084 ("No paranoia, hallucinations, or delusions.").

In sum, the ALJ's finding that Plaintiff's mental impairments are not

severe was supported by substantial evidence. The ALJ did not rely on isolated portions of the record or place undue emphasis on records showing periods of improvement. Nor did the ALJ err in giving great weight to the opinions of the consulting physicians. Remand is not warranted.

## III.
## CONCLUSION

For the reasons stated above, the decision of the Social Security Commissioner is AFFIRMED and the action is DISMISSED with prejudice.

Dated: February 14, 2018

_____
DOUGLAS F. McCORMICK
United States Magistrate Judge